76                                              414 Mass. 76

Greater Boston Cable Corp. *v.* White Mountain Cable Construction Corp.

GREATER BOSTON CABLE CORPORATION *vs.* WHITE
MOUNTAIN CABLE CONSTRUCTION CORP.[1]

Middlesex. December 7, 1992. - December 31, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Indemnity. Contract*, Indemnity, Construction contract. *Negligence*, Construction work.

A television cable corporation that used certain utility poles under license was not entitled to indemnification from a construction contractor it employed, whose negligence caused an accident on a utility pole for which the cable corporation was contractually liable under an indemnification clause in the licensing agreement with the owner of the utility poles. [79]

An indemnification clause in a construction contract did not apply to losses incurred before the effective date of the contract. [79-80]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1985.

A fourth-party claim, filed on July 17, 1987, was tried before *Patrick F. Brady*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*David D. Dowd* for the fourth-party plaintiff.

*William J. Dailey, Jr. (H. Charles Hambelton* with him) for the fourth-party defendant.

NOLAN, J. In August, 1976, New England Telephone and Telegraph Company (New England Telephone) and Boston Edison Company (Boston Edison), the licensors, entered into a licensing agreement with Greater Boston Cable Corpora-

---

[1]The only parties before us on appeal are the fourth-party plaintiff, Greater Boston Cable Corporation, and the fourth-party defendant, White Mountain Cable Construction Corp. The other parties are identified in the body of the opinion.

414 Mass. 76                                                    77

Greater Boston Cable Corp. *v.* White Mountain Cable Construction Corp.

tion (Greater Boston), the licensee. Subject to certain limitations, New England Telephone and Boston Edison agreed to allow Greater Boston access to its utility poles in the town of Stoneham (town) for the purpose of attaching television cable.[2] The licensing agreement contained an indemnification clause. The clause provided, in pertinent part: "Except, as may be caused by the sole negligence of the Licensor . . . Licensee shall defend, indemnify and save harmless Licensor . . . against and from any and all liabilities, claims, suits, fines, penalties, damages, losses, fees, costs and expenses . . . including, but not limited to, those which may be imposed upon, incurred by or asserted against Licensor . . . by reason of (a) any work or thing done upon the poles licensed hereunder or any part thereof performed by Licensee or any of its agents, contractors, servants, or employees . . . ."

Early in 1984, Greater Boston, which held the cable television franchise for the town, sought to rebuild a portion of the town's television cable system.[3] To this end, Greater Boston retained White Mountain Cable Construction Corp. (White Mountain), with whom Greater Boston had previously contracted, to perform the work. At the time, the parties did not reduce the terms of their agreement to writing.

On April 8, 1985, Peter W. Paradis, a White Mountain employee working on the "rebuild job," suffered an injury by electrical shock while installing television cable on an Edison utility pole. Paradis sued Edison. Relying on the terms of the written licensing agreement, Edison impleaded Greater Boston seeking indemnification. Greater Boston then filed a fourth-party complaint against White Mountain also seeking indemnification.

In February, 1991, Boston Edison settled with Paradis. In March, 1991, the third and fourth-party claims were tried to a jury. The trial judge concisely summarized the third-party

---

[2] The licensors jointly owned some but not all of the poles. Each licensor owned some poles individually.

[3] White Mountain's proposal for the job also included costs for some "new" construction.

claim: "In order to invoke the indemnity provision of its License Agreement with Greater Boston, Boston Edison had the burden of demonstrating that it was not solely negligent in connection with the accident. It did that by attempting to show that the negligence of one or more of Paradis, Greater Boston and White Mountain was a substantial contributing factor in bringing about the subject accident. . . . In response to special verdict questions, the jury found that Paradis and White Mountain were negligent, and their negligence caused the accident."[4] Accordingly, Greater Boston was obligated to indemnify Edison.[5]

The fourth-party complaint was tried to the jury on a question of contract. The cable installation work was proceeding on April 8, 1985, the day of the accident, without a formal written contract between Greater Boston and White Mountain. Conflicting evidence was introduced on the subject of a course of dealing between the parties and the usage of the trade with respect to the indemnity provisions in jobs like this. Following the accident, Greater Boston prepared and sent to White Mountain a "Construction Agreement" containing a clause whereby White Mountain agreed to hold harmless Greater Boston against claims for injuries on the job. The construction agreement, by its terms, was not effective until April 11, 1985, three days after the accident. The job was completed in November, 1985. The agreement was signed by White Mountain on April 23, 1987.

The special verdict question put to the jury was as follows: "Did the agreement between Greater Boston and White Mountain with respect to the Stoneham job, prior to April 8, 1985, contain an obligation of White Mountain to indemnify and defend Greater Boston with respect to any claims arising out of work on the job?" The jury responded "no" to the special verdict question.

---

[4]The judge also wrote that "[t]he jury also found that Greater Boston was negligent, but that Greater Boston's negligence was not causally related to the accident."

[5]This issue is not before us on appeal.

414 Mass. 76                                    79

Greater Boston Cable Corp. *v.* White Mountain Cable Construction Corp.

Following the jury's response to the special verdict question, Greater Boston moved for entry of judgment in its favor. Greater Boston argued that the jury's finding of causally related negligence on the part of White Mountain and the absence thereof on the part of Greater Boston established that Greater Boston's liability to Boston Edison was "derivative" or "vicarious." Given these circumstances, Greater Boston argued that it was entitled to indemnity as a matter of law. The judge rejected Greater Boston's argument and entered judgment for White Mountain on the fourth-party claim. Greater Boston appealed. We granted Greater Boston's request for direct appellate review, and we affirm.

In *Stewart* v. *Roy Bros.*, 358 Mass. 446, 459 (1970), we stated the general rule for tort-based indemnity: "Indemnity is permitted only when one does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another." In the present case, Greater Boston's liability is neither derivative nor vicarious, but stems from its promise to indemnify Edison which was contained in the licensing agreement. We refuse to shift the loss to White Mountain, despite its causal negligence, because Greater Boston voluntarily assumed the risk of indemnifying Edison. We are aware of no case in which a party who must pay damages as a result of an indemnity clause contained in a contract is allowed indemnity against a party responsible for the accident. The relationship of the parties in this case does not itself imply a right to indemnification as a matter of law. See *Larkin* v. *Ralph O. Porter, Inc.*, 405 Mass. 179, 185 (1989).

In the alternative, Greater Boston argues that the judge erred in rejecting its claim of express contract-based indemnity. As noted above, prior to Paradis's accident Greater Boston and White Mountain were operating without a formal written agreement. After the accident, Greater Boston sent White Mountain a written "Construction Agreement" which contained an indemnification clause. The construction agreement, by its terms, became effective three days after the accident.

Based on these facts, Greater Boston argues that White Mountain, by entering into the "Construction Agreement," intended to indemnify Greater Boston for any losses that it might suffer due to Paradis's accident which had already occurred. In essence, Greater Boston argues that the indemnification clause has retroactive effect. The judge ruled that the construction agreement, "[i]nterpreted as an agreement to indemnify Greater Boston for the Paradis accident . . . would fail for lack of consideration." We hold that the judge's ruling on this point was free from error. Past consideration does not support a contract.[6] See *Stroscio* v. *Jacobs*, 2 Mass. App. Ct. 827, 828 (1974), and cases cited.

*Judgment affirmed.*

---

[6]Given our disposition on the indemnification issue, we need not consider arguments raised concerning the exclusivity provisions of the Workers' Compensation Act, embodied in G. L. c. 152, § 23 (1990 ed.).